UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WEARS KAHN MCMENAMY & CO.,

   Plaintiff,         Case No. 2:12-cv-812
                 JUDGE SMITH
 -v-               Magistrate Judge Deavers

JPMORGAN CHASE BANK, N.A.,

   Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant JPMorgan Chase Banks, N.A.'s Motion to Dismiss (Doc. 9). This motion is fully briefed and ripe for review. For the reasons that follow, the Court **GRANTS** Defendant's motion.

## I. BACKGROUND

This is a breach of contract action. Plaintiff Wears Kahn McMenamy & Co., an Ohio general partnership, is the borrower on a variable interest rate commercial loan provided by Defendant, a national bank. This loan transaction is evidenced by a promissory note (the "Note").[1] The Note provides that interest is due monthly on the last day of each month, and the principal is payable on demand.[2] The Note also provides that interest on the loan accrues daily on the outstanding principal balance of the loan, and that the rate is variable and based on

---

[1] A copy of the Note is attached as an exhibit to Defendant's Motion to Dismiss, and is considered part of the pleadings as it is referred to in the Complaint and is central to Plaintiff's claim. *See, e.g.*, *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim).

[2] Plaintiff does not allege that Defendant invoked its right to demand immediate payment of the principal.

Defendant's prime lending rate plus one percent per annum, presuming a calendar year of 360 days. The Note further provides that the rate of interest accruing on the outstanding principal balance is to be adjusted to reflect the change in Defendant's prime lending rate on the same day that the prime lending rate changes.

Defendant followed a practice of sending a commercial loan invoice to Plaintiff every month.[3] Defendant would send the invoices to Plaintiff approximately 12 days prior to the end of the billing cycle, which was the second to last day of the month. Because these invoices were sent prior to the end of the applicable billing cycle, the Court will refer to them collectively as "advance billing invoices," or simply as the "invoices." The invoices contain a statement of the total payment due the last day of the month based on Defendant's calculation of the total interest accruing during that billing cycle. The calculation of interest due on the last day of the month was based on the known interest rate as of the billing date, and a projected interest rate through the end of the billing cycle (the remaining 12 or so days of the billing cycle, which is hereinafter referred to as the "projected rate period"). Each of the advance billing invoices contain the following statement:

> If you dispute the amount you owe us and you send payment for less than the amount we believe you owe us, we do not lose any of our rights and the payment will not satisfy what you owe us or operate as an accord and satisfaction unless you send that amount to CHASE, P.O. BOX 4661, HOUSTON TX 77210 and it is approved by the appropriate officer.

(Doc. 9, Exs. 1, 2, and 3). Plaintiff does not allege that it objected to Defendant's conduct, or disputed the amount it owed Defendant, in any manner, or at any time, prior to filing this lawsuit.

---

[3] Defendant has attached invoices from January 2008, until September 2012, to its Motion to Dismiss. Because these documents are referred to in Plaintiff's Complaint and are central to its claim, they are considered part of the pleadings. *See Weiner*, supra.

The dispute in this case primarily arises due to circumstances in which the actual interest rate decreased during the projected rate period.  For example, Defendant sent to Plaintiff an invoice, dated January 18, 2008 (the "January 2008 invoice"), indicating the total payment due on January 31, 2008, as it relates to the loan at issue.  The invoice is for the billing period of December 31, 2007, to January 30, 2008, and it expressly states on the first page: "Please note that the current interest has been projected from 01/18/08 through 01/30/08."[4]  The second page of the January 2008 invoice details how the total payment due for the billing period was calculated, and it shows that Defendant applied an interest rate of 8.25% for the period of January 18, 2008, through January 30, 2008.  However, for the period of January 22, 2008, through January 30, 2008, the actual interest rate was lower than the projected interest rate of 8.25%.

The next month's invoice was dated February 16, 2008 (the "February 2008 invoice"), and involved the billing period of January 31, 2008, through February 28, 2009.  The February 2008 invoice shows that the interest rate was 7.50% for the period of January 22, 2008, through January 29, 2008, and was 7.00% for January 30, 2008.  According to Plaintiff's calculations, Defendant charged it excess interest for the period of January 22, 2008, through January 29, 2008, in the amount of $9.09.  Plaintiff paid the amount due as indicated in the January 2008 invoice, and Defendant subsequently credited the $9.09 excess payment against the interest that accrued for the billing period of January 31, 2008, through February 28, 2008.  Thus, the excess payment was applied as a credit to the continually accruing interest; none was applied to the outstanding principal balance of the loan.

---

[4] This advisement is contained in every invoice in the record, albeit each has different projected rate periods.

In September 2012, Plaintiff initiated this action against Defendant for breach of contract. Plaintiff generally alleges that Defendant breached the loan agreement by charging excess interest. More particularly, Plaintiff alleges that Defendant's billing practices caused it to miscalculate interest charges when actual interest rates were lower than the rates projected by it, that these billing practices caused it to miscalculate interest charges when principal balances declined during the projected rate period, and that Defendant failed to timely and properly apply payments by its borrowers. In November 2012, Defendant filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). This motion is fully briefed and ripe for review.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a lawsuit for "failure to state a claim upon which relief can be granted." A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Although in this context all of the

factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint on two bases. First, Defendant argues that Plaintiff's breach of contract claim fails as a matter of law in view of the course of performance of the parties. Second, Defendant argues that Plaintiff's breach of contract claim fails as a matter of law under the voluntary payment doctrine. Because these arguments involve similar issues, they will be addressed together. The Court first will set forth Ohio law regarding course of performance and the voluntary payment doctrine, and then will analyze whether these defenses apply here.

5

### A. Course of Performance

Under Ohio law, a promissory note, such as the Note at issue here, is a contract, and the rules of contract interpretation apply to it. *Cranberry Financial, LLC v. S & V P'ship*, 927 N.E.2d 623, 624-25 (Ohio Ct. App. 2010). The role of courts in examining contracts is to ascertain the intent of the parties. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898 (Ohio 1999). When the contract contains ambiguous terms, the court may use the parties' course of performance to determine their intent. *See St. Marys v. Auglaize County. Bd. of Comm'rs*, 875 N.E.2d 561, 568 (Ohio 2007); *see also* Restatement (Second) of Contracts § 202(4) ("Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement."). Contract interpretation is ordinarily a matter of law. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 652 N.E.2d 684 (Ohio 1995). However, "[e]xtrinsic evidence is admissible to ascertain the intent of the parties when the contract is unclear or ambiguous, or when circumstances surrounding the agreement give the plain language special meaning." *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996).

### B. Voluntary Payment Doctrine

Ohio recognizes the voluntary payment doctrine. *Salling v. Budget Rent-A-Car Systems, Inc.*, 672 F.3d 442, 444 (6th Cir. 2012). This doctrine provides: "In the absence of fraud, duress, compulsion or mistake of fact, money, voluntarily paid by one person to another on a claim of right to such payment, cannot be recovered merely because the person who made the payment mistook the law as to his liability to pay." *State ex rel. Dickman v. Defenbacher*, 86 N.E.2d 5, 7 (1949) (cited in *Scott v. Fairbanks Capital Corp.*, 284 F. Supp.2d 880, 894 (S.D.

Ohio 2003) (Rice, J.)).  Thus, "a person who voluntarily pays another with *full knowledge* of the facts will not be entitled to restitution."  *Scott*, 284 F. Supp.2d at 894 (emphasis added) (quoting *Randazzo v. Harris Bank Palatine*, 262 F.3d 663, 667 (7th Cir. 2001)).  Stated differently, "When a party with knowledge of the facts, but without legal liability to do so, pays money voluntarily, that person has no claim to recovery for the monies so paid."  *Culberson Transp. Serv., Inc. v. John Alden Life Ins. Co.*, No. 96APE11-1501, 1997 WL 358857, *7 (Ohio Ct. App. 1997) (citing *Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co.*, 67 N.E.2d 906, 911 (Ohio 1946)).

**C.     Analysis**

Determining the applicability of the voluntary payment doctrine and whether the parties' course of performance bars Plaintiff's action requires an evaluation of Plaintiff's knowledge as it relates to Defendant's conduct that forms the basis of Plaintiff's Complaint.  Therefore, the central issue as it relates to Defendant's Motion to Dismiss is whether Plaintiff's knowledge of the pertinent facts is conclusively established by the pleadings, which includes the Complaint along with the Note and the monthly invoices.  *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("where the undisputed facts conclusively establish an affirmative defense as a matter of law," a motion to dismiss may be granted).

Plaintiff, citing *Connectivity Systems, Inc. v. National City Bank*, No. 2:08-cv-1119 (S.D. Ohio Jan. 26, 2011) (Watson, J.), argues that it would be premature for the Court to determine whether it had "full knowledge" for purposes of the voluntary payment doctrine.  Plaintiff asserts that the defendant in *Connectivity Systems*, just as the Defendant here, argued that the plaintiffs were precluded from recovering on the basis of the voluntary payment doctrine because the plaintiffs had paid the amount due on monthly invoices issued by the defendant relating to loan

7

agreements.  In rejecting the defendant's argument in *Connectivity Systems*, Judge Watson observed: "It would be premature to determine application of the 'full knowledge' element of the voluntary payment doctrine solely on the basis of the complaint and related documents." *Id.* at 4. The Court in *Connectivity Systems* did not address the issue of course of performance because the defendant did not raise the issue.  Even so, Plaintiff argues that the reasoning of the *Connectivity Systems* decision, as it relates to the voluntary payment doctrine, applies equally to the issue of course of performance.  Thus, Plaintiff argues that it would be premature to determine the parties' "knowledge" as it relates to the nature of the performance and the opportunity to object to it.

　　　　Plaintiff's reliance on the *Connectivity Systems* decision is unavailing.  Plaintiff asserts that the *Connectivity Systems* decision held that determining a party's "knowledge" is inappropriate at the pleadings stage, and thus it would be premature to dismiss a case on the basis of the voluntary payment doctrine at that stage.  Plaintiff's characterization of the holding in *Connectivity Systems* is inaccurate.  Contrary to Plaintiff's position, the *Connectivity Systems* decision did not set forth a bright line rule that a case may never be dismissed at the pleadings stage on the basis of the voluntary payment doctrine.  Instead, the *Connectivity Systems* case supports the unremarkable idea that the voluntary payment doctrine cannot be applied at the pleadings stage when the record does not conclusively establish the plaintiff's full knowledge of the facts.  Similarly, the reasoning applied in *Connectivity Systems* does not support the idea that a court may never dismiss a case at the pleadings stage on the basis of the parties' course of performance.

　　　　Moreover, this Court has applied the voluntary payment doctrine in the context of ruling on a motion to dismiss.  *See Nelson v. Am. Power and Light*, No. 2:08–cv–549, 2010 WL

8

3219498 (S.D. Ohio Aug. 12, 2010) (Watson, J.) (applying voluntary payment doctrine to dismiss unjust enrichment claim because the pleadings showed that the plaintiff had full knowledge of the nature and amount of certain charges); *Cook v. Home Depot U.S.A., Inc.*, No. 2:06-cv-571, 2007 WL 710220 (S.D. Ohio Mar. 6, 2007) (Smith, J.) (applying voluntary payment doctrine in motion to dismiss context upon finding that the plaintiff's voluntary payment of charges was not caused by a mistake of fact, despite the plaintiff's assertion).

Recently, in *Arlington Video Productions, Inc. v. Fifth Third Bancorp*, No. 11-4077, 2013 WL 560635 (6th Cir. Feb. 14, 2013), a case involving a dispute over bank fees, the defendant, in moving for summary judgment, contended that the plaintiff's breach of contract claim was barred by the voluntary payment doctrine. In citing *Arlington Video* as supplemental authority, Plaintiff asserts that the case "recognizes that the voluntary payment doctrine is inappropriate for summary judgment because merely posting information on a bank statement does not compel a finding that a customer knew what the charge was for without further investigation." (Doc. 20).

In *Arlington Video*, evidence in the record showed that the bank defendant "did not disclose to [the plaintiff] all of the facts relating to [certain disputed fees] before automatically withdrawing those fees from [the plaintiff's] account and listing unexplained 'service charges' on the monthly bank statements." *Arlington Video*, 2013 WL 560635 at *9. Consequently, the Sixth Circuit determined that, "[v]iewed most favorably to the non-moving party, the evidence shows that [the plaintiff] did not voluntarily pay the [defendant] the fees with full knowledge of the facts." *Id.* Thus, the Court concluded that, "[o]n this record, the voluntary payment doctrine does not bar [the plaintiff's] breach of contract claim as a matter of law." *Id.* Contrary to Plaintiff's suggestion, *Arlington Video* did not establish a bright line rule that application of the

9

voluntary payment doctrine is inappropriate for summary judgment. The Sixth Circuit simply held that application of the doctrine at the summary judgment stage was inappropriate based on the facts of that case, which are distinguishable from what is alleged in the case at bar. In *Arlington Video*, the bank withdrew money from the plaintiff's account for fees allegedly incurred before advising the plaintiff of all of the facts relating to the fees. In the case at bar, and as more thoroughly discussed below, the record shows that Plaintiff was aware of Defendant's billing practices before it made payments. Thus, *Arlington Video* is not controlling here.

Because the procedural posture of this case does not preclude the Court from dismissing it at this juncture on the basis of the parties' course of performance or the voluntary payment doctrine, it must determine whether these defenses apply. Plaintiff asserts that the pleadings do not conclusively establish that it possessed the requisite knowledge necessary for these defenses to apply. For example, Plaintiff asserts that "Defendant hid its belated credits" in its attempt to "adjust for previous overcharges." (Doc. 14 at 10). Plaintiff even asserts that the monthly invoices were "misleading," and that "Defendant engaged in a practice of surreptitiously netting any overpayment made by [Plaintiff] in the next month's statement, without any clear indication to [Plaintiff] of its calculus." (Doc. 14 at 11). Essentially, Plaintiff asserts that it did not have full knowledge of the facts relating to the accrual of interest on the principal balance of the loan, and the corresponding allocation of payments made pursuant to the monthly invoices, because the Defendant's monthly invoices did not expressly detail Defendant's application of any excess interest payments. In other words, Plaintiff asserts that it did not know that, when there was an overpayment of interest, Defendant was applying the excess payment to lower the amount of interest due in connection with the subsequent billing period, and not immediately to the principal.

While Plaintiff suggests that Defendant was somehow "misleading" in its monthly invoices, it fails to identify any aspect of the invoices that was misleading.  Plaintiff is correct insofar as it asserts that the monthly invoices did not expressly state that any excess interest payment, resulting from a projected interest rate being higher than the actual interest rate, was applied to reduce the amount of interest owed in the immediately subsequent invoice.  However, the fact that the invoices did not expressly state that any excess interest payment was applied as a credit to the interest due as it relates to the subsequent billing period does not render the invoices misleading.  A basic review of the monthly invoices that followed the billing periods with reducing interest rates reveals that the excess interest payments were applied to reduce Plaintiff's interest payment obligation.  All pertinent information was in Plaintiff's possession.  The invoices Plaintiff received indicated the billing period, the interest rate that was applied to calculate the amount due, the projected rate that Defendant applied for the remainder of the billing period, any changes in the interest rate during the previous billing period, and the amount of principal remaining.

For example, the February 2008 invoice shows that the interest rate decreased during the projected rate period of the previous billing cycle.  In particular, the February 2008 invoice shows that the interest rate decreased from 8.25% to 7.50% on January 22, 2008, and then decreased again to 7.00% on January 30, 2008.  The January 2008 invoice shows that Defendant applied an interest rate of 8.25% for the entire billing period, including the period of projection (January 18, 2008, though January 30, 2008).  The principal balance remained the same on the February 2008 invoice as it was for the January 2008 invoice.  Based on a review of this information, and without doing any calculations, Plaintiff would have known, once it received the February 2008 invoice, that its payment under the January 2008 invoice exceeded the amount

11

of interest that actually accrued during the January 2008 billing period. Furthermore, because the principal balance was not reduced for February 2008, Plaintiff would have known that the excess payment had not been applied to the principal.

That this excess interest payment was applied as a credit to the accruing interest can be determined solely based on the information provided in the January and February 2008 invoices and the Note. The February 2008 invoice indicates that Defendant applied a 7.00% interest rate on the outstanding principal of the loan, $45,192.27, which is the same balance shown on the January 2008 invoice. The billing period for the February 2008 invoice consisted of 29 days (January 31, 2008 through February 28, 2008). Multiplying the daily interest charge (7.00% ÷ 360) by the principal balance, $45,192.27, and then multiplying the resulting amount, 8.787, by 29 days, results in a total interest accrual of $254.83 for the billing period of January 31, 2008, though February 28, 2008. Defendant's February 2008 invoice indicated, however, that only $245.74 was the amount of interest due for this billing period, or $9.09 less than $254.83. Although the Court will not go through the arithmetic to calculate the $9.09, it notes that all information necessary to determine this amount was included in the January and February 2008 invoices (along with the 360 days per year presumption under the Note). In fact, Plaintiff's Complaint sets forth this calculation, solely relying on information contained in the January and February 2008 invoices and the Note.

Therefore, when the January 2008 invoice is viewed in connection with the February 2008 invoice, it is clear that Defendant's projected interest rate set forth in the January 2008 invoice turned out to be higher than the actual interest rate, and that Plaintiff thus paid Defendant in excess of the actual amount of interest that had accrued by the end of the January 2008 billing cycle. It is also readily discernable from the information provided on these invoices that this

excess payment was applied as a credit to the amount of interest that accrued during the immediately subsequent billing cycle. It is evident from even a cursory review of these invoices that none of the excess payment was applied to the principal remaining due, as this amount was unchanged from January 2008 to February 2008.

Plaintiff generally argues that there is, at a minimum, an issue of fact as to whether Defendant breached its duty of good faith and fair dealing by using advance billing invoices. Plaintiff further argues that Defendant's practice of applying excess interest payments as a credit to the amount of interest due in subsequent invoices, instead of immediately applying this amount to the principal balance, was unreasonable and constitutes a breach of its duty to exercise good faith and fair dealing.

Public policy requires that every contract contain an implied duty to act in good faith and to deal fairly with each other. *Fifth Third Mortg. Co. v. Chicago Title Ins. Co.*, 758 F. Supp.2d 476, 490 (S.D. Ohio 2010) (Black, J.); *see Littlejohn v. Parrish*, 839 N.E.2d 49, 54 (Ohio App. Ct. 2005) (concluding that every contract "has an implied covenant of good faith and fair dealing that requires not only honesty but also reasonableness in the enforcement of the contract."). The implied duty does not supplant express contract terms. *Id.* "[T]his duty is implied only under limited circumstances, such as when the contract is silent as to an issue. In such a case, the parties must use good faith in filling the gap." *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 764 (6th Cir. 2008). "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could have not been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 662 N.E.2d 1074, 1082-83 (Ohio 1996).

Plaintiff is correct that the Note is silent as to whether Defendant could use advance

13

billing and as to how excess interest payments should be allocated.  However, Plaintiff cannot show that Defendant breached its duty to act in good faith and to deal fairly in this regard.  Because the applicable interest rate could vary from day to day, there was an administrative burden in the calculation of the accrual of interest.  Defendant assumed this burden and issued monthly invoices to help facilitate Plaintiff's payments under the terms of the Note.  Pursuant to the terms of the loan, payment of accrued interest was due on the last day of each month.  Defendant's monthly invoicing practice served as a practical means to collect the amount of interest that was due at the end of each month.  Because Defendant sent these invoices before the end of the billing period, and the interest accruing on the loan was variable, it was reasonable for Defendant to project the rate through the end of the billing period.

      Defendant's projection of the interest rate through the end of the billing period led to an interest overpayment when the variable interest rate lowered during the projection period and if an unscheduled payment was made on the principal.[5]  It was not unreasonable for Defendant to apply this excess payment as a credit to the amount of interest owed in the next billing cycle.  It is true that if Defendant had applied excess interest payments to the principal balance, the amount of interest subsequently accruing each day would be lower.  For example, if Defendant had immediately applied the $9.09 overpayment to the principal in January 2008, instead of as a credit to the interest accruing, then the amount of interest that would accrue during the subsequent billing period would have been lower, albeit by a few cents.  However, even though application to the principal would have reduced the amount of interest accruing by pennies,

---

[5] Plaintiff's Complaint suggests that it, or other borrowers, made principal payments during the projected rate period.  *See* Complaint, at ¶ 35 ("When a principal payment was made during the [projected rate period] . . .").  However, Plaintiff does not allege that any principal payments were not immediately applied to calculate the daily accrual of interest.

14

Plaintiff would have had to pay the interest accruing on the principal without the immediate benefit of the $9.09 credit.  Thus, application of the overpayment to principal would have reduced Plaintiff's cash flow.

The agreement between the parties, as established by the Note, demonstrates an intent that Plaintiff would be required to pay accruing interest monthly, and principal only upon demand.  Thus, the parties structured the deal as an "interest only" loan subject to Defendant's immediate demand of principal, which has not occurred.  An interest only loan is a means for a borrower, such as a business, to maximize current cash flow.  The fact that Defendant applied excess interest payments, which resulted from the advance billing, as a credit to the amount of interest due the subsequent month, is consistent with Plaintiff's obligation to pay only interest monthly, which facilitated the maximization of cash flow for Plaintiff.  Furthermore, as a practical matter, Defendant's first opportunity to apply an excess interest payment as a credit to the amount of interest accruing was in connection with the subsequent invoice, as an "immediate application" of the payment, such as on the next day, would not have changed the rate of interest accrual.[6]

While Plaintiff suggests that Defendant's advance billing, or how it applied excess interest payments, was somehow unfairly opportunistic, Plaintiff acquiesced to Defendant's conduct.  And it is not surprising that Plaintiff acquiesced, considering Defendant assumed the burden of calculating the amount of interest that was accruing on the variable interest loan and

---

[6] Plaintiff cites *Connectivity Systems* for its statement that a provision granting discretion to a bank to determine how interest overpayments should be allocated does not "give [the bank] free reign as to *when* to apply the overpayment[.]" *Id.* at 11.  However, as noted above, *Connectivity Systems* did not address the issue of whether the parties' course of performance clarified the parties' intent under the loan agreement.  As such, Plaintiff's reliance on this statement in the *Connectivity Systems* decision is unavailing.

15

issued an invoice to Plaintiff projecting how much total interest would accrue by the end of each month, and considering that Defendant's application of excess interest payments as a credit to the amount of accruing interest was consistent with Plaintiff's general obligation under the Note to only pay interest each month.  Despite Plaintiff's full knowledge of Defendant's billing practices, and the consequences of the advance billing, Plaintiff did not object to the amount owed under the invoices.

   Plaintiff argues that placing the burden on it to object would be inappropriate, as it speculates that it would have been penalized for submitting anything less than required under the invoices.  The invoices do not support this contention, as they expressly provide for a dispute procedure.  And even if Plaintiff was concerned that an underpayment would automatically result in a deficiency notice or late charge, it could have simply submitted the amount as indicated on the invoice in protest and then raised the dispute with the appropriate Chase representative.  Significantly, Plaintiff does not allege that it took any action to manifest any objection to the Defendant's billing practices, prior to filing this lawsuit.  This inaction, over the course of years, can only be viewed as acquiescence with the billing practices.

   Therefore, the facts as presented in the Complaint, along with the Note and the monthly invoices, conclusively establishes that Plaintiff knew, or should have known, all facts pertinent to Defendant's billing practices and Plaintiff's payments under the Note.  Plaintiff paid Defendant with full knowledge of the facts, and thus the voluntary payment doctrine precludes Plaintiff's breach of contract claim.  Moreover, while the Note did not specify the manner of billing as it related to Defendant's collection of interest, Plaintiff did not object to Defendant's use of advance billing invoices or application of excess payments, and it paid under these monthly invoices for years, demonstrating its acquiescence to this reasonable manner of billing.

Plaintiff could have manifested its disagreement with this manner of billing or how the excess payments were allocated, but it did not.  In sum, the parties' course of performance demonstrated an intent to proceed in this manner.

Accordingly, Plaintiff's breach of contract claim fails as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (Doc. 9).

The Clerk shall remove Document 9 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**